UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

| | | |
|---|---|---|
| EARL DALE DURHAM, | : | Case No. 1:07-cv-450 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGEMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore

unentitled to supplemental security income ("SSI").  (*See* Administrative Transcript

("Tr.") 32-33) (ALJ's decision)).

**I.**

On April 26 2004, Plaintiff filed an application for SSI, alleging disability due to a

seizure disorder, degenerative disc disease of the back, Hepatitis C, anxiety and

depression.  (Tr. 69-73).  Upon denial of his claims on the state agency level, Plaintiff

requested a hearing *de novo* before an ALJ.  (Tr. 32-33).  A hearing was held on

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

August 8, 2006 and again on November 6, 2006, at which Plaintiff appeared with counsel

and testified.  (Tr. 524).  A vocational expert, Ms. Janet Chapman, was also present and

testified.  (*Id*.)

On January 12, 2007, the ALJ entered an unfavorable decision denying benefits.

(Tr. 12-27).  That decision became Defendant's final determination upon denial of review

by the Appeals Council on April 24, 2007.  (Tr. 6-8).

The ALJ's "Findings," which represent the rationale of his decision, were as

follows:

1.  The claimant has not engaged in substantial gainful activity since the amended alleged onset date of May 23, 2003.

2.  The medical evidence establishes that the claimant has severe impairments consisting of a seizure disorder, Hepatitis C, degenerative disc disease of the lumbar spine, depression, anxiety, a personality disorder, and a history of alcohol abuse in early full remission since December 2005, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3.  As discussed in the decisional body, the testimony of the claimant and his girlfriend was not fully credible and is not amply supported by the overall objective medical evidence.

4.  The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except that he is limited to a reduced range of sedentary and light work with the specific limitations set out in Exhibits B12F and B16F (20 CFR 416.945).

5.  The claimant is unable to perform his past relevant work as a construction worker.

6.  The claimant's residual functional capacity for the full range of sedentary or light work is reduced by the nonexertional limitations set forth in the decisional body.

7. The claimant is currently 42 years old, which is defined as a younger individual (20 CFR 416.963).

8. The claimant has a high school equivalency education (20 CFR 416.964).

9. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work (20 CFR 416.968).

10. Based on an exertional capacity for sedentary and light work, and the claimant's age, education, and work experience, Section 416.969 of Regulations No. 16, and Rules 202.21 and 201.28, Table Numbers 1 and 2, respectively, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

11. Although the claimant's additional nonexertional limitations do not allow him to perform the full range of sedentary or light work, using the above-cited rules as a framework for decision making, there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are unskilled light housekeeper/cleaner (445,000 nationally, 2,400 locally), light production worker (387,000 nationally, 2,900 locally), sedentary inspector/tester (15,000 nationally, 110 locally), and sedentary assembler (62,000 nationally, 465 locally).

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decisions (20 CFR 416.920(g)).

(Tr. 25 - 26).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was, therefore, not eligible for SSI. (Tr. 12-27).

On appeal, Plaintiff maintains that: (1) the ALJ erred in according a non-examining physician's opinion more weight than a treating source; and (2) the ALJ did not give proper weight to Plaintiff's seizure and witness testimony. For the reasons that follow, the undersigned finds that the ALJ's nondisability finding is not supported by

substantial evidence and hereby recommends that the ALJ's decision be reversed and

remanded for an award of benefits.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability

finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420 (1971).  In

performing this review, the Court considers the record as a whole.  *Hephner v. Mathews,*

574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of

benefits, that finding must be affirmed, even if substantial evidence also exists in the

record upon which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has

explained:

> The Commissioner's findings are not subject to reversal merely because
> substantial evidence exists in the record to support a different conclusion.
> The substantial evidence standard presupposes that there is a "zone of
> choice" within which the Commissioner may proceed without interference
> from the courts.  If the Commissioner's decision is supported by substantial
> evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is

entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, he must present

sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that

left him unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

## A.

For his first assignment of error, Plaintiff maintains that the ALJ erred in according a non-examining physician's opinion more weight than a treating source.  The undersigned agrees.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); s*ee also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983).  Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1054 (6th Cir. 1983).  If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight.  20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(d)(2).

Here, as outlined by Plaintiff, the record reflects:

Plaintiff was admitted to the emergency room on June 10, 2002 (Tr. 392), July 2003 (Tr. 290-91), and June 4, 2004 (Tr. 295), after having had seizures.  As a result of his seizures, back pain and mental health issues, Plaintiff saw numerous physicians.  On June 11, 2003, Dr. Ashok Klejriwal completed a physician certification of medication dependency for the Butler County Department of Jobs and Family Services, concluding that Plaintiff was unemployable.  (Tr. 214-16).   Dr. Kejriwal completed an identical assessment on November 5, 2003.  (Tr. 219-20).

On June 24, 2003, Plaintiff saw Dr. Stephen Bliss.  (Tr. 218).  Plaintiff told Dr. Bliss that his seizures hindered his ability to work and reported increased forgetfulness, trouble sleeping, and low energy.  (*Id*.) Plaintiff  also reported occasional panic attacks, particularly in crowds.  (*Id*.)  Dr. Bliss, an examining psychologist, completed a mental functional capacity assessment based on his clinical interview and psychological testing of Plaintiff, and concluded that Plaintiff was unemployable, specifying his anxiety and depression related to his health problems.  (Tr. 217-18).

Plaintiff was referred to the Central Clinic by Dr. Timothy Brown (who had been Plaintiff's treating physician since March 2005) for a psychiatric evaluation.  (Tr. 431). Upon examination on May 5, 2006, Dr. Daniel Glynn, Psy.D., diagnosed Plaintiff with depressive disorder NOS, alcohol dependence in early full remission, major depressive disorder, and recurrent, unspecified, panic disorder with agoraphobia and anti-social personality disorder.  (Tr. 410, 415, 417).  Plaintiff continues to receive treatment at Central Clinic with psychiatric nurse practitioner Barb Henry.  (*Id*.)

Plaintiff has been seeing Ms. Henry for psychological evaluation once a month since May of 2006.  (Tr. 535).   Upon evaluation, Ms. Henry reported that Plaintiff's symptoms included loss of pleasure, appetite disturbance, decreased energy, suicidal thoughts, inappropriate expression of emotion, impaired impulse control, mood disturbance, difficulty concentrating, psychomotor agitation, apprehension, paranoid thinking, seclusiveness, substance dependence, emotional withdrawal, unstable interpersonal relationships, motor tension, mood swings, sleep disturbance, and recurrent severe panic attacks at least once a week.  (Tr. 450).  Ms. Henry also indicated that Plaintiff was seriously limited in his ability to remember work procedures, or understand, remember and follow short and simple directions and that Plaintiff could not meet competitive standards in maintaining attention for two hours, making work decisions, requesting assistance, accepting instruction and responding to criticism, and responding to work changes.  (Tr. 451).  She found that Plaintiff had no useful ability to function in maintaining attendance, sustaining a routine without special supervision, working in

proximity to others, completing a normal work day without interruption for

psychologically based symptoms, getting along with co-workers, or dealing with normal

work stress.  (Tr. 451).  Furthermore, Plaintiff had marked restrictions in his activities of

daily living, extreme limitations in social functioning, marked limitation in maintaining

concentration, persistence, or pace, and had experienced four or more episodes of

decompensation in the last twelve months.  (Tr. 452).  Ms. Henry recommended that

Plaintiff take Seroquel, an anti-anxiety medication.  (Tr. 406).  Based on her evaluation,

Ms. Henry found that Plaintiff was "unable to work due to mental illness."  (Tr. 449).

Ms. Henry's findings are supportive of Dr. Bliss, whose opinion the ALJ rejected because

Dr. Bliss only evaluated the claimant briefly.  (Tr. 24).

The ALJ rejected Barb Henry's psychiatric assessment because she is a

"psychiatric nurse practitioner and is not an acceptable medical source whose opinion is

entitled to controlling weight."  (Tr. 25).  The ALJ further stated that "Ms. Henry had not

been seeing the claimant for very long.  The limitations referenced by her appear overly

restrictive and are not sufficiently well supported by objective clinical findings."  (Tr. 24).

As it stands, the ALJ's decision is devoid of any degree of specific consideration of Ms.

Henry's functional assessments.

The ALJ improperly discounted the opinion of Ms. Henry.  While the ALJ

summarized Henry's findings, she did not give Henry's opinion significant weight.  As a

nurse practitioner, Henry is considered an "other [non-medical] source."  *See* 20 C.F.R.

§ 404.1513 (1997).  The Sixth Circuit has previously held that an ALJ has discretion to

determine the proper weight to accord opinions from "other sources" such as nurse practitioners.  *See, e.g., Walters v. Comm'r of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997).

However, a recent Social Security Ruling controls the analysis.  SSR 06-03P was issued effective August 9, 2006, and it clarifies how to consider opinions and other evidence from sources who are not "acceptable medical sources."  SSR 06-03P, 2006 SSR LEXIS 5.  While the ruling notes that information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id.* at *3.  The ruling goes on to note that:

> "With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as *nurse practitioners* . . . have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists. Opinions from these medical sources who are not technically deemed "acceptable medical sources," under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file."

*Id.* at *4 (emphasis added).  Further, the ruling explains that opinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated by using the applicable factors, including how consistent the opinion is with other evidence and how well the source explains the opinion.  *Martin v. Barnhart*, 470 F. Supp. 2d 1324, 1328-29 (D. Utah 2006) (citing SSR 06-03P, 2006 LEXIS 5 at *5-6).  Finally, the ruling states that:

> "Although there is a distinction between what an adjudicator must
> consider and what the adjudicator must explain in the disability
> determination or decision, the adjudicator generally should explain
> the weight given to opinions from these "other sources," or otherwise
> ensure that the discussion of the evidence in the determination or
> decision allows a claimant or subsequent reviewer to follow the
> adjudicator's reasoning, when such opinions may have an effect on
> the outcome of the case."

SSR 06-03P, 2006 SSR LEXIS at *7.  Following SSR 06-03P, the ALJ should have

discussed the factors relating to her analysis of Ms. Henry's assessment, so as to have

provided some basis for why she rejected her opinion.  Ms. Henry's assessment is

supported by Plaintiff's medical history and the assessments of Dr. Kejriwal, Dr. Bliss

and Dr. Glynn.

Instead of accepting the assessments of Ms. Henry, Dr. Bliss and Dr. Glynn,

the ALJ accorded controlling weight to Dr. Robelyn Marlow's and Dr. Jerry

McCloud's assessments, although they were non-examining physicians.  It is clearly

established by law that the opinion of a non-treating "one shot" consultative physician

or of a medical advisor cannot constitute substantial evidence to overcome the

properly supported opinion of a physician who has treated a claimant over a period of

years.  *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983); *see also*

*Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (the opinion of a non-

examining physician "is entitled to little weight if it is contrary to the opinion of the

claimant's treating physician.").

Dr. Marlow, a psychologist, reviewed Plaintiff's medical records on December

27, 2004.  (Tr. 369-85).  Dr. Marlow never performed a consultative exam, nor did she

do any psychological testing.  Dr. Marlow's final assessment was, at least in part,

based on her opinion that Plaintiff was not entirely credible because of a single

inconsistency in dates alleged regarding his past alcohol abuse.  (Tr. 371).  Dr.

Marlow did not specifically assess any of Plaintiff's previous medical records or

diagnoses in her report.  On July 7, 2004, Dr. Jerry McCloud also reviewed the

evidence of record and concluded Plaintiff could perform a range of light work.  (Tr.

318-322).  Neither Dr. Marlow nor Dr. McCloud reviewed the medical records

generated by Dr. Glynn or Ms. Henry when making their assessments.

The ALJ also based her decision on Dr. James Rosenthal's assessments.  Dr.

Rosenthal performed a consultative psychological examination of Plaintiff on

December 10, 2003.  (Tr. 189-93).  He found that Plaintiff was suffering from

depression but that he could understand, remember and follow simple one and two

step instructions and was only mildly impaired in his ability to withstand work

stresses.  (Tr. 192).  Dr. Rosenthal performed a second consultative psychological

examination on June 30, 2004.  (Tr. 308-12).  He diagnosed Plaintiff with an anxiety

and personality disorder, but deemed him able to work.  (Tr. 312).  Significantly,

Dr. Rosenthal simply performed a clinical interview; he did not do any psychological

testing and only saw Plaintiff twice.

The ALJ's reliance on the reports of Dr. Marlow and Dr. McCloud, non-

Case: 1:07-cv-00450-MRB-TSB Doc #: 12 Filed: 07/23/08 Page: 12 of 16  PAGEID #: 98

examining physicians to the exclusion of the reports of Dr. Bliss and Ms. Henry, was

clear error.  Additionally, Dr. Rosenthal only saw Plaintiff on two occasions, and his

opinion does not constitute substantial evidence so as to overcome the properly

supported opinions of Dr. Bliss and Ms. Henry.

Accordingly, upon careful review the undersigned finds that the ALJ's

nondisability finding is not supported by substantial evidence.

**B.**

For his next assignment of error, Plaintiff maintains that the ALJ did not give

proper weight to Plaintiff's seizure diary and witness testimony.  With regard to

witness testimony, the ALJ must consider the testimony of friends and family

members.  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  To disregard such

testimony violates 20 C.F.R. Section 404.1513(e)(2), which mandates consideration of

observations by non-medical sources regarding how an impairment affects a

claimant's ability to work.  (*Id.*)

Plaintiff's witness, Diana Trooph, who is his live-in girlfriend of three years,

provided a seizure journal in support of Plaintiff's seizure activity.  (Tr. 168-178).

Ms. Trooph kept a seizure journal documenting when Plaintiff had a seizure, how long

it lasted, and how severe it was.  (Tr. 522).  The claimant was reported to have

multiple events of *petit mal* and *grand mal* seizures, generally lasting from a few

seconds to two minutes.  (*Id.*)  Plaintiff also had an EEG with abnormal findings and

MRI results consistent with small vessel ischemic disease, both of which constitute

objective evidence to support the seizure journal and Ms. Trooph's witness testimony. (Tr. 504, 486-87).

However, the ALJ rejected Ms. Trooph's testimony because she "simply d[id] not believe" that Plaintiff experienced the frequent degree of seizures alleged in the seizure diary. (Tr. 23). However, based on the substantial objective evidence, including EEG and MRI findings and medical records, the ALJ's claim that "there is very little, if any, documentation in the objective medical evidence of record of the claimant having been witnesses by someone other than his girlfriend to have an actual seizure" is a misstatement of the facts. (*Id.*)

In assessing Plaintiff's credibility, the ALJ also noted that Plaintiff is "noncompliant in taking his seizure medication. He probably would experience a lesser degree of seizure activity if medicated properly." (Tr. 23). Accordingly, the ALJ found that Plaintiff's failure to follow prescribed treatment detracted from his credibility. (Tr. 17-18, 20, 23-24). However, in *Lovelace v. Bowen*, 813 F.2d 55 (5th Cir. 1987), the Fifth Circuit reversed the Secretary's decision that the claimant's condition was not severe because remediable by medication, on grounds that the claimant was unable to afford the medication. The court stated "if, however, the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'" *Id.* at 59 (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)); s*ee also*

*McKnight v. Sec'y of Health & Human Servs.*, 927 F.2d 241, 242 (6th Cir. 1990)

(reversed finding that appellant's medical condition was not severe because, with

proper treatment, plaintiff could have returned to normal activities where plaintiff

could not afford treatment).

Similarly, in this case, Plaintiff was not simply refusing to take his seizure

medication, he was unable to afford it.  (Tr. 309).  Accordingly, the Court erred in

considering Plaintiff's failure to take his prescribed medication when assessing his

credibility.

## III.

When, as here, the non-disability determination is not supported by substantial

evidence, the Court must decide whether to reverse and remand the matter for

rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's

decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g);

*Melkonyan v. Sullivan*, 501 U.S. 89, 100,(1991).

Generally, benefits may be awarded immediately "only if all essential factual

issues have been resolved and the record adequately establishes a plaintiff's

entitlement to benefits."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171,

176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990);

*Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and

opposing evidence is lacking in substance, so that remand would merely involve the

presentation of cumulative evidence, or where the proof of disability is overwhelming.

*Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir.

1994); *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985).  Such is the case here.

Here, proof of disability <u>is</u> overwhelming and remand will serve no purpose

other than delay.  As fully recited herein, in view of Plaintiff's medical history and his

credible assertions of disabling conditions, as well as Plaintiff's witness testimony and

seizure diary, and the extensive medical record of evidence of disability, and the

credible opinions of Dr. Bliss and Ms. Henry, proof of Plaintiff's disability is

overwhelming.

## IT IS THEREFORE RECOMMENDED THAT

The decision of the Commissioner, that Plaintiff was not entitled to

supplemental security income benefits beginning on May 23, 2003, be found

**NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this

matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no

further matters remain pending for the Court's review, this case be **CLOSED**.


Date:  <u>July 23, 2008</u>                    <u>s/Timothy S. Black</u>
                                             Timothy S. Black
                                             United States Magistrate Judge

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

EARL DALE DURHAM,                    :     Case No. 1:07-cv-450
                                     :
        Plaintiff,                   :     Judge Michael R. Barrett
                                     :     Magistrate Judge Timothy S. Black
vs.                                  :
                                     :
COMMISSIONER OF                      :
SOCIAL SECURITY,                     :
                                     :
        Defendant.                   :

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to the proposed findings and recommendations within **TEN (10) DAYS**

after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P.

6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding

intervening Saturdays, Sundays, and legal holidays) when this Report is being served

by mail and may be extended further by the Court on timely motion for an extension.

Such objections shall specify the portions of the Report objected to and shall be

accompanied by a memorandum of law in support of the objections.  A party may

respond to another party's objections within **TEN (10) DAYS** after being served with

a copy thereof.  Failure to make objections in accordance with this procedure may

forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981);

*Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).